### EDWARD T. STILLE v. WILLIAM JENKINS.

Where the plaintiff brought an action in the year 1833, and declared on his possession of a colored boy, who was bound to serve him until the year 1837, and that the defendant knowing the premises, received and harbored the said servant in his steamboat at New Brunswick, and conveyed him from thence to New York, whereby the plaintiff wholly lost the said servant, and his services for the term of years unexpired; after verdict for the plaintiff, the court refused to arrest the judgment. The harboring and carrying away, constitute the injury, and both are laid and proved, to have been prior to the commencement of the action; and the damage, that will probably result to the plaintiff from it, may be lawfully considered by the jury, and therefore may be lawfully stated in the declaration. The plaintiff can never maintain a second action for this same injury, and all the damages he ever can recover, must be awarded to him in this one.

The plaintiff is not entitled to costs in the Supreme Court, on the motion in arrest of judgment, where the verdict is for a sum less than two hundred dollars.

This was an action on the case, commenced in this court for carrying away the servant of the plaintiff. The following is a copy of the second count of the plaintiff's declaration.

" And whereas also heretofore, to wit, on the fifteenth day of July, in the year aforesaid, the said Ephraim then and still being the servant of the said Edward T. Stille, and lawfully bound to serve the said Edward for a certain term of years, then unexpired, to wit, for and until the sixteenth day of August, in the year of our Lord one thousand eight hundred and thirty-seven; unlawfully, wrongfully and unjustly, without the license and consent, and against the will of the said Edward T. Stille departed and went away from, and out of the service of the said Edward T. Stille, to wit, at New Brunswick and within the jurisdiction aforesaid, and afterwards, to wit, on the said fifteenth day of July in the year one thousand eight hundred and thirty-three, then went and came to the said William Jenkins, who was then and there the Master or Captain and then had the command and control of a certain steamboat, called the Thistle, then plying upon the waters of the river Raritan, between the city of New Brunswick and the waters of Raritan Bay, and engaged in the transportation of passengers and merchandise from the said city of New Brunswick to the city of New York, or on their way to the city of New York; yet the said William

Jenkins, well knowing the premises, and well knowing the said Ephraim to be the servant of the said Edward T. Stille, and also well knowing that the said Ephraim had unlawfully, wrongfully and unjustly, and without the knowledge, license, or consent, and against the will of the said Edward T. Stille, departed from and out of the service of the said Edward, but contriving, and wrongfully, and unjustly intending to injure the said Edward T. Stille, and to deprive him of the service of the said Ephraim, his said servant, and of all the profits, benefits and advantages, which might and would otherwise have arisen and accrued to him from such service, then and there, to wit, on the day and year last aforesaid, at the place and within the jurisdiction aforesaid, unlawfully, wrongfully and unjustly received the said Ephraim so being the servant of the said Edward as aforesaid, on board of the said steamboat, of which he was such Master or Captain, and there harbored, detained and kept the said Ephraim, and unlawfully, wrongfully and unjustly, and without the knowledge, license, or consent, and against the will of the said Edward, took and carried away the said Ephraim in and on board the said steamboat, of which he was such Master or Captain, beyond the reach of the said Edward by means whereof the said Ephraim servant as aforesaid became wholly lost to the said Edward, and the said Edward was and is wholly deprived of the service of the said Ephraim for the term of years yet unexpired and of all the profit, benefits and advantages which might and would otherwise have arisen and accrued to him from such service; and has been put to great cost and expense in seeking for and endeavoring to recover and procure the return of the said Ephraim, and is otherwise greatly injured to wit, at New Brunswick in the county and within the jurisdiction aforesaid. Wherefore the said Edward T. Stille says he is injured and hath sustained damage to the value of one thousand dollars, and therefore he brings suit."

The jury having rendered a verdict in favor of the plaintiff, upon the return of the *postea,* the defendant obtained a rule to show cause, why the judgment should not be arrested, and filed the following reasons:

Stille *v.* Jenkins.

1. Because the second count of the plaintiff's declaration, upon which the verdict of the jury is rendered in favour of the plaintiff, contains no legal cause of action.

2. Because the case laid by the plaintiff in the said count, is not sufficient in point of law, to found an action upon.

3. Because the title of the plaintiff to recover against the defendant as laid in the said count, is defective.

4. Because in and by the said count, it manifestly appears, that a part of the damages claimed by the plaintiff, accrued after the commencement of the said action.

5. Because the jury have rendered a verdict in favour of the plaintiff for damages, which accrued after the commencement of the said action.

6. Because the verdict does not comprehend all the issues, submitted to the jury in the said cause.

7. Because the jury have rendered no verdict, upon the issue joined on the first count of the said declaration.

8. Because the declaration, pleadings, and proceedings of record in the said action, are otherwise radically defective, illegal, and void.

*H. W. Green*, for the defendant.

*Nevius*, for the plaintiff.

FORD, J. The plaintiff brought this action in the year 1833, and declared on his possession of a certain colored boy who was bound to serve him until the year 1837, and that the defendant, knowing the premises aforesaid, received and harbored said servant in his steamboat at New Brunswick, and from thence conveyed him to the city of New York, whereby the plaintiff wholly lost the said servant and his services for the term of years then unexpired. After a verdict had been rendered for the plaintiff, the defendant moves in arrest of judgment, because the action is for prospective and future damages, in part, that will not have accrued until August 1837. It is laid down in 1 *Chit. Plead.* 259, for which he cites 1 *Saund. Rep.* 171, that no part of the damages must appear to have accrued after the time of declaring. The rule is however

better expressed in 1 *Chit. Plead.* 232, thus: It must not appear that the damages have accrued from a cause of action *subsequent* to the commencement of the suit. If the *cause* of the damage, that is, the *injury*, be prior to the commencement of the action, the damages that will probably and naturally flow from it, may be proved and recovered. As for assaulting the plaintiff and killing a sound horse only four years old that might have been serviceable for eight years to come, the damages may be estimated according to the probable value of the future services. Past services are not to be considered; for the plaintiff is not deprived of them; he has enjoyed them. So for assaulting the plaintiff and wounding his right hand so that the use of it is entirely lost; if the injury was done prior to the commencement of the action, and he was a carpenter or mason, and cannot afterwards follow his trade, that future damage to him, may lawfully be laid and proved. In no other way could damages be proportioned to the extent of the injury. Here the harboring and carrying away constitute the injury, and both are laid and proved to have been prior to the commencement of the action; and the damage that *will* probably result to the plaintiff from it may be lawfully considered by the jury and therefore may be lawfully stated in the declaration.

It is objected that not a temporary but a total loss is laid in the declaration, which is more than the plaintiff could possibly prove. But the jury have found it total as it is laid. Positive proof might not have been given of it, any more than of the loss of a ship at sea, nor was it requisite. If a jury can infer a fact from circumstances adduced before them to their entire satisfaction, even the fact of murder, the verdict is as good as if it was founded on positive evidence. It is said to be possible that the boy may have returned before this time and be now in the service of his master. But if the possibility of a verdict being wrong, makes it wrong, no verdict could ever be right; for it is possible that the most positive witnesses may all have committed perjury from motives of interest or revenge.

The plaintiff can never maintain a second action for this same injury, and all the damages he ever can recover must be awarded to him in this one. The jury had a right to consider

therefore whether it was a total loss or not, and to award damages commensurate with what they believed to be the truth of the case. In my opinion the rule to show cause why the judgment should not be arrested must be discharged.

RYERSON, J. In this cause, a verdict was rendered for the plaintiff, on the second count of his declaration. The defendant has moved in arrest of the judgment, urging that the cause of action as stated, is not lawful, that the plaintiff has claimed and obtained a verdict for damages, which by law he is not entitled to recover.

The plaintiff in the said second count of his declaration, alleged that on the 15th of July, in the year ——, one Ephraim, a coloured boy, was lawfully bound to serve him, and from thence until the 15th August 1837. That the said boy unlawfully left his service, without his knowledge or permission; and that the defendant (the master of a steamboat,) knowing the premises, received the said boy on board his boat, and there harboured and detained him, and took and carried him away, without the knowledge, or consent of the plaintiff, beyond his reach; by means whereof the said Ephraim became wholly lost to the plaintiff. And he was deprived of his services for the whole of the said term of years, yet unexpired.

Upon the argument it was insisted that the plaintiff could lawfully claim and recover damages only for the loss of service, for the time elapsed at the time of commencing this suit; and that for any loss of service for any time subsequent, the action must be renewed after the time had elapsed—if the plaintiff could recover therefor. That the plaintiff had in fact claimed, and got a verdict for damages not yet accrued, and which he might in fact never sustain, as the boy might be recovered, or return and serve out his time. The plaintiff's counsel cited in support of his argument, 1 *Chitty Pl.* 359, 390, 2 ; 1 *Ventris,* 193; 1 *Mod.* 107 ; 2 *Saund.* 169, 70; which seems to go very far to maintain the doctrine contended for. But it may be remarked, that in none of the cases referred to, does the plaintiff distinctly charge on the defendant, that by his unlawful acts, the servant was *wholly lost* to the owner, or in other words,

*irrecoverable.* The cases also are old, arising before the modern facilities for removing from place to place, from province to province, and from State to State, had been prepared. These and other causes have very much changed the habits, and propensities of the people, especially of the class, from which the lower order of servants are taken. Not only so, but pursuit and recovery, are rendered much more difficult and precarious. If these remarks have any truth, as applicable to other and older countries, they have much more in this, where the propensity and the facilities for change have always been greater, and the perpetual movements of its inhabitants have become in some measure a national characteristic. A rule, then, for the adjustment of right and wrong—entirely just as applicable to another age, and another country, might fall very short of the mark in this. Our law admits of no wrong without an adequate remedy. And it does appear to me, that to deprive another of his servant—to put him beyond his reach and recovery, is an injury of a more serious character, than would be a mere privation of *present* labour. A man *may* have, in this State, an interest in a coloured servant, which he may lawfully let to sale and assign. It may therefore have its price, its value in the market, which a jury may ascertain : and if the owner has been unlawfully deprived thereof, of which they are the constitutional judges, they can and ought to measure to him an adequate compensation.

And further it does appear to me, that to talk at this day, of a man's repeating his action from time to time, for an injury of this character, which we must suppose to have been proved to the satisfaction of the jury, when the wrong-doer may be entirely beyond his reach, is but presenting to him the name of redress ; a bare mockery of justice. The expense of renewing the action, must more than absorb all the damages, of such limited and partial recovery.

It has been supposed, that the relief given by our statute, for seducing a slave, or assisting him to escape from his master, *Rev. Laws*, 369, was a redress beyond the common law. But I can only regard it as affirming a principle of that system. Certain it is that a satisfaction equally great might have been

Stille *v.* Jenkins.

recovered by the principles of that law, in *some* form of action. Such an injury respecting a slave would at least have sustained an action of trover : (of which a slave may be the subject,) and therein the whole value be recovered. An apprentice, or other servant for a term of years, is not strictly property, and therefore not the object of the action for trover. But the master has an interest in the service, which ought to receive at least equal favour and protection. If it should be said that in trover the property is changed, and therefore a higher rule of damages was allowed, but in the case of a servant of a different character, no such acquisition of property would result from the verdict : I answer that no man ought to be excused from fully compensating an injury done by him, because the law gave him no incidental advantage. But if necessary, I would rather allow a change of property in the service, by construction of law, than withhold a proper and adequate remuneration for an injury done.

I conclude therefore, the defendant should take nothing by his motion, but that the plaintiff should have judgment on the verdict.

HORNBLOWER, C. J. It is admitted that the verdict and recovery in this case, was on the second count in the declaration. That count is not for any cause of action, arising under the statute respecting servants and apprentices ; but at the common law, and is for taking and carrying away the servant of the plaintiff, knowing him to be such, and without the plaintiff's consent. I think the count is substantially defective. It states that the defendant carried away the servant, on the 15th July, A. D. 1833, the servant then being bound to serve the plaintiff until the 16th August 1837 ; a period which has not even yet arrived. And yet the plaintiff alleges that the defendant carried away the said servant " beyond the reach of the plaintiff, *by means whereof* the said servant became *wholly* lost to the plaintiff, and the plaintiff *was and is wholly* deprived of the service of the said servant, for the term of years *yet unexpired*, and of all the profits, benefits and advantages which *might* and would otherwise have accrued to him, &c." Now, this I think is a *non sequitur*. The allegation is not only grammatically

inaccurate but mathematically untrue. It may be true, at the expiration of the term, if the servant shall not in the meantime return or be reclaimed, that the master has lost all his services and the profits thereof during the whole term for which he was bound to serve. But it is not *now* true that the plaintiff *has* sustained such loss. The servant may have been *beyond the reach* of the plaintiff, or in some place unknown to him when the action was commenced, and even when the cause was tried; but for all we can judicially know or determine, he may *now* be in his master's possession and service. It is said however that the jury have found the allegation to be true; that the servant had been removed beyond the plaintiff's *reach*, and that the plaintiff *had then* lost his services during the term yet to come. But are we bound, or ought we, to render judgment on the verdict of a jury, when it appears upon the record that that verdict is founded upon an allegation, which in the nature of things cannot be true? Suppose the fact to be, and it should be so admitted here, that the servant returned or was re-taken by his master, the very next day after the trial, and was now and had been ever since in his service, must we give judgment for the entire loss of the servant, because the jury six months ago undertook to say he never would return or be reclaimed? Again: what is the meaning of the words "beyond the reach of the plaintiff?" Is it a question of law, or of fact? And when shall it be said, that the carrying away, is beyond the plaintiff's reach, and when not beyond his reach? Certainly the plaintiff's right of action does not depend upon the question whether the servant was carried beyond his reach, or not. If a man carries away my servant, to the next neighbourhood or town, and detains him but a single day, my right to a *per quod* action, is as complete, as if he carried him to a distant State or country and detained him for a year. Then whether beyond the plaintiff's reach or not, can only be a question affecting the damages. If beyond *reach*, then the jury are to give damages as for an *entire loss*. If not beyond reach, then only for the loss of service that actually accrued prior to commencing the action. This would make it very important to fix some rule by which to determine, when "beyond reach" and when not,

otherwise it must be mere matter of opinion with the jury—nor can I conceive of any rule that would be safe and uniform in its operation.   Carrying a servant out of the State would not always be carrying him beyond the reach of his master.   A person residing in Essex or Bergen, could more readily pursue and reclaim his servant in the city of New York, than he could follow him to Cape May.   But suppose on the trial of this cause, the defendant in order to protect himself against damages as for a total loss, had offered to prove that he did not carry the servant "beyond the reach" of his master, but that he carried him only across the street or to the next town, where he then was, and could be reclaimed at any moment; would such evidence have been admissible ? If not, then the plaintiff might in every case recover as for a total loss.   But if such evidence would be competent and should be actually given, the jury certainly ought not to allow for the future services of the servant; and yet under a count like the one in question, the verdict would appear to be for the loss of service during the term yet to come.

The 5th *Section* of the statute, respecting slaves, *Rev. Laws*, 369, gives the *value* of the slave to the owner, in an action of debt or on the case, against a person harbouring, concealing or conveying away such slave ; if the slave shall thereby be *lost, die*, or be otherwise *destroyed,* or shall be disabled or rendered unserviceable.   But this action is not founded on the statute, nor could it be, for the servant in question was not *a slave*, but only bound to service for a term of years, and no such remedy is given in the statute relating to apprentices and servants. *Rev. Laws*, 367.   If therefore this action can be maintained to the extent contended for, upon common law principles, there was no need of the statute provision just referred to in the case of slaves.   I have yet to learn, that prospective damages, can in any case, be declared for, or claimed on the record, at the common law.   In trover, and in trespass *de bon. asport.* the whole value of the chattel considered as an entire property, is recoverable, because the recovery changes the title.   But even in those cases, no damages are claimed in the declaration for the future services of the horse or ox, or for the profit which the

Stille *v.* Jenkins.

plaintiff might make of the article for time to come. In short, the anticipated, apprehended, or possible consequences of any injury, are never laid as the foundation for damages in any case; the books furnish us with no forms of declarations in *per quod* actions, in which the loss of service, that *may* happen *after the trial*, is laid as a ground for damages. On the contrary the loss of service complained of, is that which has occurred, between the doing of the injury and the commencement of the action. A jury in fixing the amount of damages, may and ought to consider, the inevitable and natural consequences incident to the injury complained of; not by way of estimating the amount of future and contingent loss, but as giving character to the transaction, and rendering it more or less aggravated, and regulating their verdict accordingly. But it is said, the plaintiff can have but one action, and unless he can recover for the whole term of service at once, he must wait till that term expires, and it may then be too late ; the defendant may escape, witnesses die, or the statute bar. This argument is plausible but not solid. The plaintiff must choose his own time. He may bring his action as soon as his right to it is completed, or he may wait until the accumulated damages renders it an object for him to seek redress. But the question before us, is not whether in any case a jury may consider an injury of such an aggravated nature, as to entitle a plaintiff to the full value of the thing injured, or taken away, but whether in any case a plaintiff can claim on the record contingent and prospective damages ; that is, damages that he *may, or may not* sustain, as future circumstances shall happen. I am of opinion he cannot do so, either upon principle or authority. The books and cases cited by defendant's counsel, and particularly the case of *Hambleton* v. *Veere*, 2 *Saund.* 169, 170, are conclusive. Judgment ought therefore to be arrested.

*Rule discharged.*

*Nevius*, for plaintiff, now moved for costs for opposing the motion in arrest of judgment.

*H. W. Green, contra,* cited *Rev. Laws*, 309, *Section* 1.

Stille *v.* Jenkins.

PER CURIAM. This was an action on the case, commenced in this court, for carrying away the servant of the plaintiff. The jury rendered a verdict, and judgment has thereon been given for the plaintiff for a sum less than two hundred dollars. By the 1st *Section* of the act to prevent suits under a certain sum, being brought in the Supreme Court, *Rev. Laws*, 309, it is enacted " that if in any suit which shall be instituted in the Supreme Court of this State, the plaintiff shall not recover above two hundred dollars exclusive of costs, then such plaintiff shall not be entitled to costs," except in cases in which the freehold or title to lands may come in question, or where the suit has been removed into this court by the defendant. The defendant then, in this case, had a right to resist the plaintiff's recovery in all the lawful and usual modes of defence, without the hazard of paying costs to his adversary. A motion in arrest of judgment was a legal and proper mode of taking the opinion of the court upon the sufficiency of the plaintiff's declaration. This he might have done by demurrer before trial ; and it will not be pretended, that if judgment had been given against him on demurrer, and the jury had afterwards assessed damages at less than two hundred dollars ; the plaintiff could have recovered the costs on demurrer. This is not like an application to the favour and discretion of the court, which may be granted on terms, or if unfounded, be refused with costs ; but it was a legal mode of defence upon a strictly legal ground. This motion must therefore be refused, and judgment be entered for the plaintiff without costs.

*Judgement for plaintiff without costs.*

CITED in *Reeve* v. *Eft*, 2 *Vr.* 141.